UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

CARLOS GONZALEZ,

             Petitioner,

          - against -

UNITED STATES OF AMERICA

            Respondent.

-------------------------------------------------------- X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  9/12/14
```

**OPINION AND ORDER**

99-cr-1113(SAS)

13-cv-7588(SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

       Carlos Gonzalez brings this pro se motion to vacate, set aside, or correct his sentence pursuant to section 2255 of Title 28 of the United States Code ("section 2255").[1] He challenges his sentence on the ground that he was denied effective assistance of counsel at his sentencing as a result of his counsel's failure to seek a reduced sentence based on the harsh conditions of his confinement at a Colombian prison and the Metropolitan Correctional Center in Manhattan (the "MCC").[2] For the following reasons, the motion is DENIED.

## II.   BACKGROUND

---

[1]    *See* Petition for a Writ of Habeas Corpus ("Petition").

[2]    *See id.* at 1-2.  Gonzalez does not identify the Colombian prison.

## A.    The Offense Conduct

Between 1995 and 1999, Gonzalez was a member of a violent

criminal organization that was responsible for approximately fifty armed robberies

throughout the New York City metropolitan region.  During two robberies he

participated in, "members of the robbery crew shot and killed their victims: a

retired New York City Police Detective who was acting as a courier for a meat

company and a female drug courier."[3]  On December 28, 1999, Gonzalez was

charged in a twelve-count Superseding Indictment.[4]  On March 13, 2002, he was

arrested in Colombia pursuant to a provisional arrest warrant and detained there

pending extradition to the United States.[5]  He was released into the custody of the

---

[3]     Memorandum of Law of the United States of America in Opposition
to Carlos Gonzalez's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or
Correct His Sentence ("Gov. Mem."), at 1.

[4]     The Superseding Indictment charged: (1) participation in the conduct
of the affairs of the Restrepo organization through a pattern of racketeering
activity, under the Racketeering Influenced Corrupt Organizations Act ("RICO"),
18 U.S.C. § 1962(c); (2) RICO conspiracy, 18 U.S.C. § 1962(d); (3) five counts of
using a firearm during the commission of crimes of violence, 18 U.S.C. § 924(c);
(4) three counts of robbery, conspiracy to commit robbery, 18 U.S.C. § 1951, and
attempted murder, 18 U.S.C. § 1959, in connection with the Hilton Hotel robbery;
and (5) five counts of robbery, conspiracy to commit robbery, 18 U.S.C. § 1951,
and murder, 18 U.S.C. § 1959, in connection with the American Sirloin Meat
Company robbery.

[5]     In May 2002, the United States government formally requested his
extradition. *See United States v. Gonzalez*, 275 F. Supp. 2d 483, 485 (S.D.N.Y.
2003).

2

United States Marshals Service for transport to the United States in February

2003.[6]

### B.     The Guilty Pleas and Superseding Information

On July 24, 2003, Gonzalez pled guilty, without the benefit of a plea

agreement, to three counts of a Superseding Indictment – participating in a

racketeering enterprise; conspiracy to commit racketeering; and conspiracy to

commit a robbery affecting interstate commerce.[7]  On June 29, 2010, the

Government filed a Superseding Information, which charged Gonzalez in three

counts – the use of a firearm during a crime of violence or a narcotics conspiracy to

cause the death of a person; conspiracy to commit a robbery affecting interstate

commerce; and the use and carrying of a firearm during a crime of violence.[8]  That

same day, he pled guilty pursuant to a cooperation agreement to each count of the

Superseding Information.  Under the cooperation agreement, he was required to

affirm his earlier plea of guilty with respect to the Superseding Indictment.[9]

### C.     Sentencing

---

[6]     *See id.*

[7]     *See* Gov. Mem. at 2.

[8]     *See id.* at 3.

[9]     *See id.*

3

On October 20, 2011, I held a sentencing hearing.  As indicated on the record of the hearing, I reviewed the Probation Department's Revised Pre-Sentence Report dated October 17, 2011 (the "PSR"); the Government's letter pursuant to section 5K1.1 (the "5K1 letter") of the United States Sentencing Guidelines ("the Guidelines") describing Gonzalez's substantial assistance; victim impact statements forwarded by the Government, requesting the maximum sentence available; and a letter from Gonzalez.[10]  Defense counsel indicated that he had reviewed the materials with his client, and, without objection, I adopted the findings of fact and Guidelines calculation set forth in the PSR.  I also acknowledged the Government's request for a departure from the Guidelines based on Gonzalez's cooperation.[11]

Gonzalez's total offense level was 42, and, based on his prior convictions, his Criminal History Category was III.  This resulted in a Guidelines sentencing range of three hundred and sixty months to life in custody, to be followed by a mandatory consecutive term of twenty-five years.[12]  However, based on the 5K1 letter, I had the discretion to exclude the mandatory  twenty-five-year

---

[10]     *See* 10/20/11 Hearing Transcript ("Tr."), Ex. A to Gov. Mem., at 2.

[11]     *See id.* at 4-5.

[12]     *See id.* at 5.

4

consecutive sentence.[13]  After considering "all of the sentencing factors" set forth

in section 3553 of title 18 of the United States Code ("section 3553"), I imposed a

sentence of one hundred and eighty months in custody to be followed by five years

of supervised release.[14]  Without the 5K1 letter, Gonzalez's sentence "would more

likely have been life imprisonment" because of the murders and other forms of

violence associated with his crimes.[15]

## III.   LEGAL STANDARDS

### A.   Section 2255

Section 2255 provides that:

> A prisoner in custody under sentence of a court established by Act
> of Congress claiming the right to be released upon the ground that
> the sentence was imposed in violation of the Constitution or laws
> of the United States, or that the court was without jurisdiction to

---

[13]   *See* 18 U.S.C. § 3553(e) ("Upon motion of the Government, the court
shall have the authority to impose a sentence below a level established by statute as
a minimum sentence so as to reflect a defendant's substantial assistance in the
investigation or prosecution of another person who has committed an offense.");
U.S.S.G. § 5K1.1 (describing factors relevant to imposing a sentence below a
statutory minimum).

[14]   Tr. at 11.

[15]   *Id.* at 12-13 (noting further that even if the sentence had not been life
imprisonment, "it would have been 360 months plus 25 [years].  He has obviously
caught a tremendous break as a result of his cooperation.").  Notably, Gonzalez has
received time-served credit for his years in pre-sentence confinement.  According
to the Government, Gonzalez "is currently scheduled to be released on April 7,
2015."  Gov. Mem. at 7 n.5.

impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Relief under section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in [a] complete miscarriage of justice."[16] Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, courts have established rules that "make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."[17]

The Second Circuit has interpreted section 2255 "as requiring a hearing in cases where the petitioner has made a 'plausible claim' of ineffective assistance of counsel."[18] Thus, the petitioner need not establish that "he will necessarily succeed on the claim" to warrant a hearing.[19] However, a hearing is

---

[16]    *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (per curiam) (quotation marks omitted).

[17]    *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (quotation marks omitted).

[18]    *Morales v. United States*, 635 F.3d 39, 45 (2d Cir. 2011) (quoting *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009)).

[19]    *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000).

only warranted where the petitioner's "application [ ] contain[s] assertions of fact that [the] petitioner is in a position to establish by competent evidence."[20]  The court must then determine whether, viewing the record "in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a *prima facie* case for relief."[21]

However, "[a]iry generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing."[22]  Nor is a court required to presume the credibility of factual assertions "where the assertions are contradicted by the record in the underlying proceeding."[23]  Moreover, "'[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion.'"[24]  Depending on the allegations in the motion, a "court may use methods under [s]ection 2255 to expand the record

---

[20]     *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987).

[21]     *Puglisi*, 586 F.3d at 213.

[22]     *Aiello*, 814 F.2d at 113-14. *Accord Haouari v. United States*, 510 F.3d 350, 354 (2d Cir. 2007).

[23]     *Puglisi*, 586 F.3d at 214.

[24]     *Id.* at 213 (quoting Rule 4(b) of the Rules Governing § 2255 Proceedings for the United States District Courts).

7

without conducting a full-blown testimonial hearing."[25]  Potential methods

available to a court to supplement the record include "'letters, documentary

evidence, and, in an appropriate case, even affidavits.'"[26]

## B.    Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a petitioner

must show that: (1) his attorney's performance fell below "an objective standard of

reasonableness" under "prevailing professional norms" and (2) that he suffered

prejudice as a result of that representation.[27]  Both elements must be proven by the

petitioner to assert a valid claim.  When considering the first factor, a court must

apply a "strong presumption" that counsel's representation fell within the "wide

range" of reasonable professional assistance.[28]  "[S]trategic choices made after

thorough investigation of law and facts relevant to plausible options are virtually

unchallengeable."[29]

---

[25]     *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (citing
*Blackledge v. Allison*, 431 U.S. 63, 81 (1977)) (stating that courts "may employ a
variety of measures in an effort to avoid the need for an evidentiary hearing")).

[26]     *Id.* (quoting *Raines v. United States*, 423 F.2d 526, 529-30 (4th Cir.
1970) (footnote omitted)).

[27]     *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984).

[28]     *Id.* at 689.  *Accord Bell v. Cone*, 535 U.S. 685, 697-98 (2002).

[29]     *Strickland*, 466 U.S. at 690.  *Accord Mayo v. Henderson*, 13 F.3d 528,
533 (2d Cir. 1994) ("In assessing the attorney's performance, a reviewing court

"Even if a defendant shows that particular errors of counsel were

unreasonable, . . . the defendant must show that they actually had an adverse effect

on the defense."[30]  Thus, to establish prejudice

> [t]he [petitioner] must show that there is a reasonable probability
> that, but for counsel's unprofessional errors, the result of the
> proceeding would have been different.  A reasonable probability
> is a probability sufficient to undermine confidence in the
> outcome.[31]

In other words, "[i]t is not enough 'to show that the errors had some conceivable

effect on the outcome of the proceeding.'"[32]

Finally, the order of analysis of the two *Strickland* prongs –

performance and prejudice – is at the discretion of the court.  As explained by the

Supreme Court:

> [T]here is no reason for a court deciding an ineffective assistance
> claim to approach the inquiry in the same order or even to address
> both components of the inquiry if the defendant makes an
> insufficient showing on one.  In particular, a court need not
> determine whether counsel's performance was deficient before

---

must judge his conduct on the basis of the facts of the particular case, 'viewed as of
the time of counsel's conduct,' and may not use hindsight to second-guess his
strategy choices.") (quoting *Strickland*, 466 U.S. at 690).

[30]      *Strickland*, 466 U.S. at 693.

[31]      *Id.* at 694.

[32]      *Harrington v. Richter*, 582 U.S. 86, 131 S. Ct. 770, 787 (2011)
(quoting *Strickland*, 466 U.S. at 693).

examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.[33]

Accordingly, if a court finds that there is no prejudice, it need not reach the performance prong.[34]

## IV.   DISCUSSION

### A.   Summary Dismissal Is Appropriate

Gonzalez argues that his counsel should have sought a reduction in his sentence based on the "harsh and cruel" conditions of his confinement at the MCC and in a prison in Colombia.[35] However, Gonzalez fails to set forth *any* facts about the conditions of his confinement to support this contention, and thus summary dismissal is warranted.[36] This is because Gonzalez has not provided any basis for

---

[33]    *Strickland*, 466 U.S. at 697.

[34]    *See Farrington v. Senkowski*, 214 F.3d 237, 242 (2d Cir. 2000) (stating that courts need not resolve the *Strickland* performance prong if the prejudice prong is more readily resolved).

[35]    Petition at 5.

[36]    *See Blackledge*, 431 U.S. at 74 ("[C]onclusory allegations unsupported by specifics [are] subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *LoCascio v. United States*, 395 F.3d 51, 57 (2d Cir. 2005) ("Mere generalities . . . will not normally entitle the applicant to a hearing") (quotation marks omitted); *Aiello*, 814 F.2d at 113-14

this Court to conclude either that counsel's conduct was outside the reasonable range of representation or that Gonzalez was prejudiced by that conduct.

**B.      Gonzalez Failed to Show that His Attorney's Conduct Fell Below an Objective Standard of Reasonableness**

Based on the results achieved by his counsel – a one hundred and eighty month reduction from the low end of the Guidelines – the strategic decision to focus on cooperation rather than conditions of confinement does not fall below "an objective standard of reasonableness" under "prevailing professional norms."[37] Putting aside whether the conditions of confinement were sufficiently severe to justify a downward departure, counsel may have found it somewhat contradictory to seek credit for Gonzalez's cooperation while in custody while at the same time asking for leniency based on the conditions of such custody. This is especially true

---

(stating that claims resting on "airy generalities" and "conclusory assertions" are insufficient to sustain a claim under section 2255); *United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir. 1970) (concluding that a district court may deny petitioner's section 2255 motion without a hearing "where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false, or patently frivolous"); *Matura v. United States*, 875 F. Supp. 235, 237-38 (S.D.N.Y. 1995) (finding that petitioner's conclusory assertions of ineffective assistance, without any allegations of fact to support the assertions, fail "to establish that his counsel's performance was deficient [and] . . . fail [ ] to overcome the presumption [under *Strickland*] that counsel acted reasonably"); *Belloso-Ibarra v. United States*, No. 09 Civ. 8216, 2010 WL 431904, at *3 (S.D.N.Y. Feb. 8, 2010) ("[A] federal habeas petition may be dismissed if it contains only vague or conclusory allegations.") (quotation marks omitted).

   37      *Strickland*, 466 U.S. at 688.

because the significant downward departure based on Gonzalez's cooperation would not have been possible without the time he spent at the MCC – Gonzalez had pled guilty in 2003 without any plea agreement, but entered into the agreement to cooperate, and then cooperated, while at the MCC. Defense counsel may have also decided that it was not in Gonzalez's best interests to be heard complaining about his confinement given the extraordinary harm that his crimes caused to victims and their families. Instead, counsel may have reasonably concluded that the best course was focusing on Gonzalez's acceptance of responsibility and cooperation.

In addition, the allegation of harsh or cruel confinement at the MCC is contradicted by the record. At the sentencing hearing, Gonzalez's counsel asked the Court to recommend to the Bureau of Prisons that Gonzalez "*remain* at the Metropolitan Correctional Center."[38] This was because Gonzalez had concerns about his safety and he considered himself safe at the MCC.[39] Gonzalez's statements during his interview by the Probation Department and the medical records provided by the MCC are also inconsistent with the type of harsh and cruel

---

[38]     Tr. at 15.

[39]     *See id.*

treatment typically required for a downward departure.[40]  The factual findings in
the PSR were adopted at the sentencing hearing without objection from either
defendant or his counsel.[41]  Accordingly, Gonzalez's allegations are insufficient to
rebut the presumption that counsel acted reasonably in not raising the conditions of
Gonzalez's confinement.[42]

### C.    Gonzalez Failed to Demonstrate Prejudice

Most significantly, Gonzalez's motion fails to show a reasonable
probability that the outcome of his sentencing would have been different had his
counsel raised the conditions of his confinement in Colombia or at the MCC.  As a

---

[40]    *See* PSR ¶¶ 181-183 (stating that other than esophagitis and recurring
pain in his right knee and right thumb "defendant indicated that he otherwise
maintains good physical health" and that he "has no other history of medical
treatment for any significant illnesses or injuries"), 184 ("[Gonzalez] related that
he met with BOP medical personnel on one occasion due to the 'stress' of his
arrest and confinement.  Other than receiving medication for the treatment of
headaches, he has not been prescribed any medications.  Additionally, he declined
the psychiatric services offered by the BOP.").

[41]    *See* Tr. at 4.

[42]    I was also aware of Gonzalez's confinement in Colombia and at the
MCC. *See* PSR ¶¶ 74 (indicting the dates defendant was arrested in Colombia and
extradited to the United States), 179 (indicting based on interview with defendant
that he lived with his mother in Bogota, Colombia from 1999 until his arrest); Tr.
at 7 (defendant was extradited from Colombia), 13 (defendant detained at the
MCC); 14 ("I note [defendant] has been in U.S. custody since February 10, 2003");
*Gonzalez*, 275 F. Supp. 2d at 485-86 (describing defendant's arrest in Colombia in
March 2002, his subsequent detention pending extradition, and his transfer to the
United States in February 2003).

threshold matter, "[d]istrict courts have 'no obligation' to reduce a sentence based

on conditions of confinement."[43]  Courts typically exercise their discretion to grant

a downward departure only "where the conditions in question are extreme to an

exceptional degree and their severity falls upon the defendant in some highly

unique or disproportionate manner."[44]  The Second Circuit has explained that the

Guidelines permit downward departures based on conditions of confinement under

section 3553(b), which provides for departures on grounds of "'an aggravating or

mitigating circumstance of a kind, or to a degree, not adequately taken into

---

[43]      *Brizard v. United States*, No. 11 Civ. 6033, 2013 WL 1809636, at \*6
(S.D.N.Y. Apr. 30, 2013) (quoting *United States v. Naranjo-Ramirez*, No. 09-
4343, 402 Fed. App'x 576, 578 (2d Cir. Nov. 23, 2010)).  *Accord United States v.
Carty*, 264 F.3d 191, 196 (2d Cir. 2001) (stating that downward departures based
on conditions of confinement are discretionary); *United States v. Villegas-
Amariles*, No. 06-1399, 237 Fed. App'x 654, 656 (2d Cir. June 27, 2007)
("Villegas-Amariles [ ] contends that the district court failed properly to account
for the conditions of his pre-extradition confinement.  To the extent he asserts that
the district court should have granted him a downward departure on this basis, we
cannot review its refusal to do so.").

[44]      *United States v. Mateo*, 299 F. Supp. 2d 201, 208 (S.D.N.Y. 2004).  In
*Mateo*, the court detailed how the defendant was denied medical care for over
fifteen hours while giving birth and also ordered on more than one occasion to strip
in front of male guards or face disciplinary consequences.  *See id.* at 211-12.  In
finding that a departure was warranted under these circumstances, the court
"emphasize[d] that Mateo's experience is uniquely extraordinary, beyond the
heartland of ordinary disparities [in conditions of confinement], thereby justifying
departure."  *Id.* at 212.

14

consideration by the Sentencing Commission in formulating the guidelines.'"[45]  In addition, a downward departure may be necessary in order to prevent disproportionate sentencing – *i.e.*, without the departure, a defendant's punishment would effectively exceed that given to defendants convicted of similar crimes that did not suffer harsh treatment.[46]

      However, Gonzalez's sentence already includes such a substantial downward departure from the applicable Guidelines range that a further reduction based on conditions of confinement would almost certainly have been unwarranted.  The Guidelines range was three hundred and sixty months to life, with a mandatory consecutive term of twenty-five years.  When imposing the sentence, I addressed the factors set forth in section 3553 in detail, emphasizing the extreme violence of the robbery crew, including murder, Gonzalez's role in these crimes, the importance of just punishment, and the need to protect the public from the defendant.[47]  These factors made a significant prison term a forgone conclusion, but I exercised my discretion and granted an ample downward departure from the

---

[45]     *Carty*, 264 F.3d at 196 (quoting U.S.S.G. § 5K2.0) (citing 18 U.S.C. § 3553(b)).

[46]     Section 3553(a)(6) provides that one of the factors to be considered in imposing a sentence is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]"

[47]     *See* Tr. at 11-14.

Guidelines because of his cooperation with the Government.[48]  Based on the Government's 5K1 letter, I did not impose the mandatory twenty-five-year consecutive sentence,[49] and then sentenced him to a term that was *fifteen years less than* the *low end* of the Guidelines range.  As I explained at the sentencing hearing, "the public really does need protection from this defendant.  When he was on the street all those years, he did nothing but engage in violent crimes over a long period of time.  Many people were hurt and at least two were killed."[50] Indeed, without Gonzalez's cooperation – which was agreed to and carried out while he was at the MCC – he would have received a life sentence based on consideration of the applicable Guidelines range and the relevant sentencing factors.[51]  Finally, the one hundred and eighty month downward departure from the low end of the Guidelines range afforded Gonzalez greatly exceeds the largest departure in the cases he cites, which involved different underlying offenses, circumstances, and

---

[48]     In addition, as already noted, Gonzalez's decision to accept responsibility resulted in a three-level reduction of the offense level.  *See* PSR ¶¶ 152-155.

[49]     *See United States v. Johnson*, 567 F.3d 40, 52 (2d Cir. 2009) (stating that "a district court alone may determine what effect to give to a 5K1.1 letter"); 18 U.S.C. § 3553(e).

[50]     Tr. at 13.

[51]     *See id.*

16

well-established proof of exceptional conditions of confinement.[52]  Accordingly,

Gonzalez cannot demonstrate "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."[53]

## V.    CONCLUSION

For the foregoing reasons, Gonzalez's section 2255 motion is denied.

The remaining issue is whether to grant a certificate of appealability ("COA").  For

a COA to issue, petitioner must make a "substantial showing of the

denial of a constitutional right."[54]  A "substantial showing" does not require a

petitioner to demonstrate that he would prevail on the merits; petitioner must

merely show that reasonable jurists could differ as to whether "the petition should

---

[52]    *See* Petition at 3-4; *see, e.g.*, *United States v. Torres*, No. 01 Cr. 1078, 2005 WL 2087818 (S.D.N.Y. Aug. 30, 2005) (granting one level offense reduction based on detailed conditions of confinement over thirteen months in Colombian prison in case involving a non-violent crime, criminal history category I, offense level 26, and Guidelines range of 63-78 months); *Mateo*, 299 F. Supp. 2d at 206-07, 212 (granting nine-level departure based on the harsh circumstances previously described where defendant was also deemed to have played only a "minor" role in drug conspiracy and was not an active member of the criminal gang); United *States v. Mendola*, No. 03-cr-449 (10 months representing an additional 33 percent credit for time served under harsh conditions); *United States v. Orozco-Mendez*, No. 05-cr-1060 (12 months); *United States v. Restrepo-Garcia*, No. 04-cr-1157 (5 months); *United States v. Cardona*, No. 05-cr-1001 (20 months where defendant's offense level was 27 with a criminal history category I).

[53]    *Strickland*, 466 U.S. at 694.

[54]    28 U.S.C. § 2255(h).

17

have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[55]  Petitioner made no such showing.  Accordingly, I decline to grant a COA.  The Court also certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal.[56]  The Clerk of the Court is directed to close this case [13-cv-7588].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           September 11, 2014

---

[55]     *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  *Accord Middleton v. Attorneys Gen.*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

[56]     *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

18

## - Appearances -

**Petitioner (Pro Se):**

Carlos Gonzalez
# 54701-054
Northeast Ohio Correctional Center
2240 Hubbard Road
Youngstown, Ohio 44505

**For Respondent:**

Niketh Velamoor
Assistant United States Attorney
One Saint Andrew's Plaza
New York, NY 10007
(212) 637-1076